Brady, J.
The contention arising from these facts is that assuming the various transactions to have been originally separate and distinct, the parties agreed to merge them and *724 did so, and they became therefore a single indivisible one as to all of the twelve presses remaining of those delivered. This proposition rests chiefly upon the case of Secor v Sturgis (16 N. Y., 548), the effect of which has been misunderstood and the breadth of which has been misconceived. The learned justice who wrote the opinion therein and that the true distinction between demands or rights of action which are single and entire and those which are several and distinct, is that the former immediately arise out of one and the same contract and the latter of different acts or contracts, and he proceeds to illustrate this view by several suggestions. It must be said, however, that no difference of opinion could well exist on the subject It is one of the questions about which no doubt could be entertained and as to which the rule must stand out in bold relief. This case does not however, present the question there discussed for it is conceded here that the contracts herein were independent, but is insisted that they were amalgamated by the conduct and acts of the parties relative to them after they were made and wholly performed on the part of the plaintiff and partly performed by the defendants assignor. It is supposed that the combination in one account of the details of all transactions—the record of payments made and renewed notes given without a separate account as to each press or transaction is the culminating incident which created a new contract and deprives the plaintiff of the benefit of its lien under the original agreement of sale. The precise question was considered in Zimmerman v. Erhard (83 N. Y., 74). One of the defenses therein was that another action was pending for the same cause and it was predicate of the proposition that the different sales alleged constituted one cause of action only and an account rendered containing the items as to all was sought to be used to the plaintiff’s disadvantage, but the court held the transactions to be distinct, and that the rendition of such an account did not change the contract or evince that the transactions were not separate and distinct. The evidence herein, it may be said, shows a determination on the part of the plaintiff to maintain its lien in all its integrity however lenient it might be as to the payments to be made. Interviews between the. defendants assignor on the subject which are not gainsayed establish this beyond doubt. Indeed, it may be also said that the only evidence which the defendant can evoke on the subject is the manner in which the accounts were kept and this as we have seen cannot be employed against the plaintiff’s lien.
It appears that the sum due on the presses covered by this action was stated by the plaintiff’s general manager, and with sufficient certainty to call upon the defendant to assail the statement, if he could- do so. The object was clear enough, because if the amount due on the presses herein claimed was tendered with the costs of the action they could be retained. The transactions are separate and distinct, and *725 each must rest upon its own merits. The defendants having failed to establish that the contracts become one and indivisible, the defense failed also. It could not be said that the former judgment obtained in an action on one of the several contracts mentioned was for the same cause of action. It was not in fact, and could not be unless the doctrine of merger discussed has sprung into existence and must be applied here. A party insisting upon a former recovery as a bar must show that the record of a former suit includes the matters alleged to have determined. Secor v. Sturgis, supra, 554; Campbell v Butts, 3 N Y, 173; Griffin v. Long Island R. R. Co., 102 N. Y , 449, 452, 2 N. Y. State Rep., 454.
It seems to be contended also on behalf of the defendant that unless the presses were to be considered as bought under one contract and the title was therefore to remain in the plaintiff until all were paid for, then the presses were paid for, for which this action is brought.
This result is not established by the evidence. There is a fragment for example of the note for one thousand dollars given upon the settlement of the contract in suit still existing, the renewal notes taken, each embracing a portion and each reducing the amount. This is shown by Mr. Brower, the managing agent of the plaintiff, who said as matter of fact that he was able to state that there was six hundred and sixty odd dollars due on that note as matter of computation. He said in answer to his question on the subject: “ In other words you applied payments that were made upon the notes which had been given on account of the different presses.” “We took that $1,000 note; it was charged back to him on a certain date, and other notes charged back on that date. These amounts were renewed in certain renewal notes. A certain part of that thousand dollar note was represented in each one of these notes, and if you took each one of these notes, and if you took each one of these renewals and followed them up, you can compute exactly how much has been paid on that note, and I have a memorandum and will give you the dollars and cents.”
He had previously stated that he had arrived at the amount stated by tracing out that original note from its maturity until it was split up into two hundred dollar notes. The learned counsel for the appellants had ingeniously sought to make the witness admit in some mode directly or indirectly the merger of the lien, and in some respects made it appear that it was done, but the witness removed the obscurity by showing that it was the indebtedness on the books only that was amalgamated—one debt or transaction existing only so far as the books were concerned—that is as matter of accounting.
The learned counsel for the plaintiff has shown by a detailed presentation of the account, the accuracy of the statement that a part of the one thousand dollar note was not paid. It should be. said further that no direction appears to *726 have been given as to the application of the payments made, • and the plaintiff was evidently wholly uncontrolled in that respect. It is also to be said that the burden was put upon the defendant to prove title perfected to the presses in question by the payment of the outstanding liability, and this has only been attempted by resort to asserted infirmities in the plaintiff’s accounts. They are involved and complicated, it is true, but as explained by the plaintiff’s officers and employees, who alone were called, they do not assist the defendant in the effort made in that direction. The defendant called no others. .
The defendant also contended that the release of five of the presses mentioned in the statement of facts bears upon the agreement that the twelve presses not released should be held as security for the unpaid purchase price of the seventeen; yet the detailed examination of the account already mentioned shows that they were paid for when released. But the best response to this element of the defense is the finding made by the referee in the former action as-follows:
“ Thirteenth. That the acceptance of new notes for each ascertained balance of account was for the accommodation of said Tousey by way of extension of the time of payment of said purchase money. The parties did not intend thereby to modify in any respect the terms of the contract in reference to the presses in suit beyond extending said time.”
If the defendant resorts to this judgment for any purpose he must take it as he finds it, not in fragments, but as a whole. It was not difficult m transactions like those between the defendant’s assignor and the plaintiff, distinguished as they were by numerous details involved and complicated to create a seemingly worthy contest on the merits, and perhaps to leave some obscurity as the result, whatever disposition should be made of them ultimately, but there is nothing shown which throws any suspicion of fair dealing upon the plaintiff, while it distinctly appears that the difficulties encountered spring from the nonpayment of the purchase price according to the contract and the numerous extensions of time given for that purpose and the details they embraced.
The judgment should be affirmed, with costs.
Van Brunt, P. J., and Daniels, J., concur.